**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:21-CR-17-HAB |
| | ) | |
| ADRIAN JOHNSON | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

When it rains, it pours. Defendant Adrian Johnson (Johnson) drove without a valid license in a vehicle with an expired registration. He attracted the attention of K-9 Deputy Mathew Haber (Deputy Haber) of the Dekalb County Sheriff's Department (DCSD), who followed him on I-69, ran the vehicle plate, discovered the registration infraction, and initiated a traffic stop. From here matters got progressively worse for Johnson. Deputy Haber discovered Johnson was driving on a suspended license, a misdemeanor offense. Johnson was removed from the vehicle and a pat-down search uncovered $1,600 in cash in his pocket – an unusual amount of pocket money in rural Dekalb County. Next a free air sniff by certified K-9 Rico caused more problems. Rico alerted several times as he circled the vehicle which, in turn, led Deputy Haber to conduct a thorough search of the vehicle's interior. That search yielded drugs, guns, and ammunition and led to the charges in this case. Johnson now sits charged in a federal three-count superseding indictment with possession with intent to distribute methamphetamine and fentanyl, 21 U.S.C. §841(a)(1) (Count 1); possession of a firearm by a felon, 21 U.S.C. § 922(g)(1) (Count 2); and possession of a firearm in furtherance of a drug trafficking crime, 21 U.S.C. § 924(c). (ECF No. 26).

Before the Court is Johnson's Motion to Suppress evidence (ECF No. 34). In that motion, Johnson challenges the warrantless vehicle search contending that it violated the Fourth Amendment. He seeks suppression of all the evidence found inside the vehicle. The Court conducted an evidentiary hearing and received briefing from the parties (ECF Nos. 40, 46, 49, 50). Because the Court finds that the search complied with the Fourth Amendment, the Motion to Suppress will be DENIED.

**FACTUAL BACKGROUND**

These facts are excerpted from the transcript of the evidentiary hearing held on September 21, 2021. (Tr. at ___, ECF No. 43). On January 26, 2021, Deputy Haber was on duty driving a fully marked police vehicle equipped with in-car video. At about 11:00 p.m., Deputy Haber was traveling along Seventh Street near I-69 in Auburn, Indiana, when he noticed a white SUV drive by him. Deputy Haber observed the driver of the SUV look away from Deputy Haber's vehicle and down under his arm as he passed. (Tr. at 15-16). This drew Deputy Haber's attention as he believed the driver was trying to hide his face from the officer's view.

Deputy Haber began following the vehicle southbound on I-69. He ran a computer check on the license plate. The plate came back expired, and Deputy Haber observed that the sticker on the license plate was also out of date.[1] Deputy Haber then activated his emergency lights to initiate a traffic stop. The in-car video, offered by the Government (Tr. Ex. 12), reveals that Deputy Haber activated his lights at 1:58–1:59. The vehicle pulled over next to a guardrail about 27 seconds later and came to a complete stop around 36–37 seconds after the lights were activated. When the driver pulled over, Deputy Haber, using his PA system, directed the driver to pull past the guardrail. On direct examination, Deputy Haber testified that he believed the vehicle was "very slow" to pull

---

[1] It is an infraction in Indiana for a person to operate a vehicle that has expired plates. Ind. Code § 9-18.1-11-2.

over. (Tr. at 17). However, on cross-examination, Deputy Haber acknowledged that he does not know what a reasonable time for a vehicle to pull over would be. (*Id.* at 47).

With the vehicle pulled over, Deputy Haber approached the passenger side of the vehicle and contacted the driver who turned out to be Johnson. Deputy Haber requested Johnson's license and registration. Johnson provided a bill of sale for the vehicle dated September 20, 2020,[2] and a paper copy of an Indiana ID card. Deputy Haber returned to his vehicle to write a citation for the expired plate and perform a records check on Johnson. Deputy Haber's records check revealed that Johnson was "suspended prior," meaning that his license was suspended and he had a prior conviction within 10 years. This made it a misdemeanor for Johnson to operate a vehicle in Indiana. (Tr. at 21). At that point, Deputy Haber decided to issue a warning for the expired plate and impound the vehicle because Johnson was not legally authorized to drive the vehicle and it was not registered to him. (*Id.* at 21-22, 31-32). Deputy Haber called for a second officer and Deputy Carren Franke (Deputy Franke) arrived on the scene to assist.

At this point, Johnson was still inside his vehicle. When Deputy Franke arrived, Deputy Haber approached Johnson and requested him to step out of the car. Deputy Haber asked Johnson if there was anything in the vehicle he needed to be concerned about and Johnson responded, "no." Johnson then consented to a pat-down search. Inside one of Johnson's pockets, Deputy Haber located $1,600 in cash. At this point Deputy Haber decided he would deploy his K-9 partner to do a free air sniff of the vehicle. Deputy Haber then placed Johnson, without handcuffing him, inside Deputy Franke's patrol vehicle.

This is where Rico takes center stage. Deputy Haber deployed Rico for a free air sniff around Johnson's vehicle. Deputy Haber testified that he decided to have Rico conduct a free air

---

[2] Upon transfer of a vehicle, Indiana requires the vehicle to be registered within forty-five (45) days after the vehicle is acquired. Ind. Code § 9-18.1-11-5.

sniff "mainly because of the way he reacted to me when I first saw him and because it took Johnson so long to stop." (Tr. at 24). Rico alerted on the passenger side of the vehicle twice, both times by sitting, which Deputy Haber testified matched Rico's training.[3] Rico's job being complete, Deputy Haber returned Rico to his police vehicle. Deputy Franke handcuffed Johnson and advised him of the positive alert and an impending search of his vehicle.

Deputy Haber searched the vehicle and located a methamphetamine pipe with white residue. He then read Johnson his Miranda rights and asked Johnson if he wished to speak to him. Johnson declined. Deputy Haber then returned to the vehicle and located marijuana shake in the vehicle. He also noticed "natural voids" (rather than trap compartments) in the vehicle. After removing the plastic molding in the passenger side area of the wheel well, Deputy Haber located a black bag containing 44 grams of methamphetamine, a drug that test positive for a fentanyl mixture, and a handgun. In the driver side "natural void" (wheel well), Deputy Haber located a Hi-Point pistol box that contained a Hi-Point pistol with an obliterated serial number. At that point, Johnson was advised he was under arrest and Deputy Franke transported him to the DeKalb County Jail.

Deputy Haber stayed behind to facilitate the impound of the vehicle. He testified that he followed the DeKalb County standard operating procedure for an inventory search and impound of a vehicle.

## LEGAL ANALYSIS

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Because a traffic stop constitutes a "seizure" under the Fourth Amendment, it is "subject to the

---

[3] Defendant does not contest Rico's training or certification.

constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States, 517 U.S. 806, 810* (1996). The court in *Whren* explained "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.*; *see also, United States v. Jackson*, 962 F.3d 353, 357 (7th Cir. 2020) (reasonable suspicion of a traffic violation provides a sufficient basis to justify a traffic stop). "The government bears the burden of proving by a preponderance of the evidence that reasonable suspicion supported the traffic stop." *Id.*

The Government asserts, and Johnson concedes, that Deputy Haber had reasonable suspicion to conduct an investigatory traffic stop once he ran the vehicle plate and learned it was expired. Johnson also concedes that no Fourth Amendment violation occurred when Johnson was asked to step out of the vehicle. Nor was the Fourth Amendment implicated by the pat-down search, as Johnson consented to that search.

Johnson argues instead that he was seized under the Fourth Amendment from the initial vehicle stop. He argues that this seizure turned into an arrest soon after when he was instructed to sit in the cage in the back of Deputy Franke's vehicle. He contends that his freedom of movement was impaired inside the patrol car and the rear door only opened from the outside. Thus, in Johnson's view, he was under arrest before Deputy Haber deployed Rico for the free air sniff and before being placed in handcuffs and read his Miranda rights. Further, because he was secured inside Officer Franke's vehicle when Deputy Haber searched the vehicle, he asserts that the warrantless vehicle search incident to his arrest was unlawful under the holding in *Arizona v. Gant,* 556 U.S. 332 (2009).

"Warrantless searches are considered *per se* unreasonable under the Fourth Amendment unless one of a few specifically established and well-delineated exceptions applies." *United States*

*v. Williams*, 627 F.3d 247, 251 (7th Cir. 2010) (citing *Gant*, 556 U.S. 332). One such exception, a search incident to arrest, permits a warrantless search if "an arrestee is within reaching distance of the passenger compartment at the time of the search *or* it is reasonable to believe the vehicle contains evidence of the offense of the arrest." *Arizona v. Gant*, 556 U.S. at 346 (emphasis added). When Johnson was placed inside Deputy Franke's patrol car, the only basis for arrest was the misdemeanor offense of driving while suspended. So, a search of the vehicle based solely on that offense would have only been justified if Johnson was somewhere near the vehicle or Deputy Haber believed the vehicle contained evidence related to his suspended license. Johnson is correct, then, that a search incident to arrest would not justify the extended search of the vehicle's interior that occurred. But Johnson's argument is of little consequence because, as the Government points out, the automobile exception to the warrant requirement provides an independent basis for the search.

The Seventh Circuit has observed that "[t]he suspicion required for a vehicle search incident to arrest under *Gant* is keyed to the offense of arrest" while the automobile exception to the warrant requirement, which requires probable cause to believe that evidence of a crime might be found in the car, "is not tied to an arrest." *United States v. Edwards*, 769 F.3d 509, 514 (7th Cir. 1014). When there is probable cause to search a vehicle, law enforcement may search "all parts of the vehicle in which contraband or evidence could be concealed, including closed compartments, containers, packages, and trunks." *Id.* (citing *United States v. Scott*, 516 F.3d 587, 589 (7th Cir. 2008)); *United States v. Ross*, 456 U.S. 798, 823–24 (1982). When searching a vehicle, "an individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband." *Ross*, 456 U.S. at 823. "The probable cause determination must be based on objective facts that could justify the

issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officers." *Id.* at 808.

An officer may conduct a free air sniff around a vehicle by a trained drug-sniffing dog during a traffic stop so long as the use of the canine does not prolong the stop. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005); *Rodriguez v. United States,* 575 U.S. 348 (2015). A trained drug sniffing dog's positive alert on a vehicle provides probable cause to search a vehicle. *See United States v. Guidry*, 817 F.3d 997, 1005 (7th Cir. 2016). That is what happened here. When Rico circled the vehicle, probable cause already existed for Johnson's arrest on the misdemeanor charge. At that point, his car would be towed. The use of Rico did not prolong the traffic stop in any meaningful way or prolong Johnson's ability to leave the scene. By his own admission, he was already in police custody and going nowhere.

Even if perhaps the free air sniff somehow prolonged the stop, officers may detain a vehicle beyond the time necessary to conduct a traffic stop if the officer has reasonable suspicion of criminal activity, such as possession of illegal drugs. *Rodriguez,* 575 U.S. at 355; *Guidry*, 817 F.3d 1005 (7th Cir. 2016). From the time of the initial stop, Deputy Haber testified that two facts created reasonable suspicion in his mind that something was amiss. First, he testified that he believed Johnson was obscuring his face from Deputy Haber when he first passed him. Second, he observed that it took Johnson what he considered to be an extended time to pull over for the traffic stop.

Johnson tries to challenge these two facts as potentially having innocent explanations, to no avail. Deputy Haber's observation that Johnson appeared to be turning away from him and shielding his face is not an unreasonable one and his testimony was credible. *See United States v. Miles*, No. 1:21-CR-00118 TWP-DML1, 2022 WL 252270, at *5 (S.D. Ind. Jan. 26, 2022) (officer's testimony that defendant appeared nervous and appeared to be checking his rear-view

mirror to see if he would follow him was sufficient for reasonable suspicion). Likewise, his judgment that it took Johnson longer than necessary to pull over given the circumstances is entitled to some deference. After all, "a police officer views the facts through the lens of his police experience and expertise." *Ornelas v. United States*, 517 U.S. 690, 699 (1996). While the facts observed by Deputy Haber were not a smoking gun that something more serious than a traffic violation was underway, they were more than a hunch. And when the Court factors in the recovery of $1,600 cash during the pat-down search, the Court must give "due weight" to the officer's reasonable inferences. *Id.* Given his eleven years of law enforcement experience, it was reasonable for Deputy Haber to believe that Johnson was obscuring his face and taking an extended time to pull over for more serious reasons than a suspended license. In sum, the automobile exception applies to the vehicle search and the search was supported by probable cause. The motion to suppress is, therefore, DENIED.[4]

## CONCLUSION

Based on the reasoning above, the Defendant's Motion to Suppress (ECF No. 34) is DENIED.

So ORDERED on February 16, 2022.

s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT

---

[4] Because the Court finds the vehicle search was valid under the automobile exception, it need not address the Government's argument that the search was permissible as a vehicle inventory search.